**Entered on Docket**
**October 31, 2005**

_____
**Hon. Linda B. Riegle**
**United States Bankruptcy Judge**

1

2

3

4

5

6

7

8          **UNITED STATES BANKRUPTCY COURT**

9              **DISTRICT OF NEVADA**

10                  * * * * * * *

11  In Re:                          )        BK-S-05-13605-LBR
                                    )
12  ROBERT & ODETTE VIRISSIMO,      )        Chapter 7
                                    )
13          Debtor.                 )
    _____)
14  In Re:                          )        BK-S-05-15667-LBR
                                    )
15  CHERYL A. HEISEL,               )        Chapter 7
                                    )
16          Debtor.                 )
    _____)
17

18      <u>**MEMORANDUM OPINION GRANTING TRUSTEE'S**</u>
           <u>**OBJECTION TO EXEMPTION**[1]</u>

19          At issue is the effect of the amendments to 11 U.S.C. § 522 as added by § 322(a) of the

20  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).[2]  Specifically,

21  this Court must decide whether those amendments as set forth in § 522(p) limit the amount that a

22  Nevada debtor can claim as exempt as his homestead under Nevada law if the debtor has not

23

24

25

26      [1]As set forth below, two cases with identical legal issues have been presented to this

27  Court.  This opinion is entered with respect to both and an order will be entered in each.

28      [2]Pub. L. No. 109-8, 119 Stat. 23 (2005).

1

1   owned the property for more than 1215 days and did not previously own property in this state.[3]

2       As set forth below, the Court finds that those amendments are applicable to debtors who

3   are otherwise entitled to claim the greater homestead under Nevada law and that the limit is the

4   $125,000 set forth in 11 U.S.C. § 522(p).

5                                           **FACTS**

6       The Court heard arguments in the above two cases on October 17, 2005.   In each case the

7   debtors filed their petition in Nevada after April 20, 2005.   In each case the debtors claimed a

8   homestead on property that was purchased less than 1215 days before the petition date.   Neither

9   debtor had owned a homestead in this state before that time.[4]   In each case the debtor has more

10  than $125,000 equity in the property.

11                                       **DISCUSSION**

12  ***Exemptions before BAPCA***

13      Prior to the enactment of the 1978 Bankruptcy Code, exemptions were determined

14  entirely under nonbankruptcy law and debtors were limited to the exemptions available in the

15  state of their domicile.   Exempt property never became property of the estate.

16      The original1978 Code, by virtue of § 541, brought all property into the estate whether or

17  not it might be claimed as exempt.   Hence in order to receive the exemption, the debtor had to

18  claim the exemption.    The House version of what ultimately became the 1978 Code authorized

19  debtors to choose between a federal list of exemptions and exemptions available under state and

20  nonbankruptcy federal law.   The Senate version continued the pre-Code policy of incorporating

21  state and nonbankruptcy federal exemptions by reference.   As a result of a compromise the

22  House version was accepted but the states were given the power to opt out of the federal

23  exemptions list.  11 U.S.C. § 522. *See generally,* 4 COLLIERS ON BANKRUPTCY ¶¶ 522.01-

24

25  ───────────────

26      [3]Neither party made any constitutional challenge to these provisions and the Court will
    not speculate whether any such challenge may exist.

27      [4]The Virissimos' moved to Nevada in October 2003 and Ms. Heisel, although a Nevada
28  resident, did not own a home in Nevada prior to the purchase of her home in January, 2003.

522.02 [1] (2005); Norton Bankruptcy Law and Practice 2d §§ 46.1 - 46.2 (2004).  The exercise by a state of its right to limit the use of the federal exemptions is generally called an "opt-out."

### *Nevada Homestead Exemptions*

Nevada is characterized as an opt-out state.   N.R.S. § 21.090(3), provides that "any exemptions specified in subsection (d) of § 522 of the Bankruptcy Act of 1978, 11 U.S.C. § 522(d), do not apply to property owned by a resident of this state unless conferred also by [Nevada law]".      The homestead provided by Nevada law is, however, far more liberal than that provided by § 522(d).   While the federal homestead exemption is currently only $18,450, the Nevada homestead applicable in these cases is $200,000 and that amount was raised to $350,000 effective July 1, 2005. N.R.S. § 115.010.  The Nevada constitution provides that the homestead provided by law shall be exempt from forced sale, Nev. Const. art. 4, § 30 and  N.R.S 21.090)(*l*) statutorily carries that into effect.   Nevada Courts have interpreted these constitutional and statutory provisions liberally in favor of the persons for whose benefit they were enacted.  *See Jackman v. Nance,* 109 Nev. 716, 718,  857 P.2d 7, 8 (1993)(and cases cited therein).

### *Exemptions under BAPCPA*

BAPCPA did not amend the mechanics of determining which exemptions were available to debtors in opt-out states. Rather, it added language to 11 U.S.C. § 522 (b) to lengthen the domiciliary requirements to claim a particular state's exemption law and added subsections (o), (p)  and (q), which limit the amount of the exemption in certain circumstances.

Sections  U.S.C. § 522 (b) and (p) are at issue:[5]

> (b)(1) Notwithstanding § 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, para graph (3) of this subsection. In joint cases filed under § 302 of his title and individual cases filed under Sections 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly

---

[5]Congress made these amendments effective immediately upon passage.  As a consequence, notwithstanding the delayed effective date of October 17 for most of BAPCA provisions, the amendments at issue here are applicable to these cases.

3

administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (2) and the other debtor elect to exempt property listed in paragraph (3) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.

(2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

(3) Property listed in this paragraph is--

(A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this §, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;

. . . .

If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).

11 U.S.C. § 522(p) provides:

(p)(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in--

(A) real or personal property that the debtor or a dependent of the debtor uses as a residence;

(B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;

(C) a burial plot for the debtor or a dependent of the debtor; or

(D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

(2)(A) The limitation under paragraph (1) shall not apply to an exemption claimed under subsection (b)(3)(A) by a family farmer for the principal residence of such farmer.

(B) For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.

4

1    It is the application and meaning of this language that is at issue in this case.   At least

2   two bankruptcy courts have decided this issue and have reached conflicting conclusions.  Judge

3   Haines, in *In re McNabb*, 326 B.R. 785 (Bankr. D. Ariz. 2005) has held that the language "as a

4   result of electing under subsection (b)(3)(A) to exempt property under State or local law" is plain

5   and that there is no need to resort to legislative history.  Under his interpretation, the plain

6   meaning is that the $125,000 limitation only applies to debtors in those states that allow the

7   debtors to elect between federal and state exemptions.  It is not applicable to debtors that live in

8   opt-out states such as Arizona and, by inference, Nevada.

9    In a contrary opinion, Judge Mark, in *In re Kaplan*, 2005 WL 2508151 (Bankr. S.D. Fla.

10   2005) has disagreed with the reasoning in *In re McNabb*, and has determined that the legislative

11   history should be considered.   As he notes, the phraseology is not merely awkward but rather it

12   is subject to more than one plausible reading.   Because of this ambiguity courts must look at the

13   legislative history to confirm legislative intent.   Moreover, even if the plain meaning appears to

14   limit the application of the statute, the court must still consider legislative intent where a contrary

15   legislative intent is clearly expressed.  Looking at the legislative history, Judge Mark found

16   Congress clearly intended to make this limitation applicable to all debtors.

17    ***Is there a "plain meaning" and what is it?***

18    Judge Haines says there is no election if the debtor resides in an opt-out state.   This

19   Court respectfully disagrees.   This Court believes that Judge Haines has not focused on the

20   mechanics of the statute and the language used in setting forth the debtor's rights.   Technically,

21   under the terms of the statute, ***there is an election***.  That election may become ineffective if the

22   debtor chooses a federal exemption in an opt-out state, but the debtor nonetheless makes an

23   "election" within the meaning of the statute.

24    The steps are as follows.  Under 11 U.S.C. § 541 all property is property of the estate.  If

25   the debtor wishes to exempt property he must engage in an act to do so.      11 U.S.C. § 522(*l*).

26   Pursuant to § 522 (b)(1), he may elect to choose property listed in 11 U.S.C. §522(b)(2) or (b)(3).

27    It is the ***effect*** of the election that is limited.  Paragraph (b)(2) provides that the property

28   exempted is that specified under subsection (d) of 522 unless the state law that is applicable

5

specifically does not so authorize. Paragraph (b)(3) provides that the property exempted is that property exempt under federal law (other than subsection (d)) or state or local law applicable on the date of filing.

Given the language of the statute, the debtor makes an election as to whether to exempt property and whether to use paragraph (b)(2) or paragraph (b)(3). If he "elects" paragraph (b)(2) in Nevada, or any other opt-out state, and if a party timely objects, then he is denied the exemption. But conversely, as the United States Supreme Court has held in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), if a party does not timely object to a claimed objection, the property is exempt even if there is no basis for the claiming of that exemption. *See also*, *In re Heintz,* 198 B.R. 581 (9th Cir. BAP 1996)(failure to object to exemptions results in valid "exemption by default"). Similarly, if the debtor fails to choose any exemptions, no property is exempted.

Congress could have avoided the notion of a debtor's election and still preserved the right of a state to limit its citizens' use of federal exemptions. It could have said, for example: "A debtor shall receive exemptions set forth under subsection (d) unless the state law does not permit such exemptions to be used. If a state does not permit a debtor to use such exemptions, the debtor shall receive the exemptions provided under the laws of that state." With that language there is no election and a debtor automatically receives state exemptions but not the exemptions under § 522(d).

The effect of § 522 as written is that an election is made. What property is ultimately exempted depends upon the process of objection. Thus the plain meaning of the statute is preserved. Whether or not a state allows the property which is set forth in 11 U.S.C. § 522(d) to be exempted, the debtor elects which exemptions to claim.

### *Ambiguity - an alternative rationale*

Although the Court believes that under the "plain meaning" rule the statute applies to debtors in all states, whether or not they reside in an opt-out state, this Court acknowledges, however, that under either Judge Haines' "plain meaning" or this Court's "plain meaning" there

is a defect in the statute which creates an ambiguity.  Subsection (p) refers to the debtor's election under paragraph (b)(3)(A).   However, under either view there is no "election" with respect to the right to select the § 522(d) exemptions set forth in that paragraph.   That paragraph merely describes what exemptions are applicable if the federal option is not chosen or (under Judge Haines' view) unavailable.  Paragraph (b)(1) is the paragraph that provides for the election.

This problem, as well as the fact that there are several plausible meanings to the statute, operates to create an ambiguity.  *See* 2A Norman Singer, Statutes and Statutory Construction §45.02 (2000).  *See also*, *United Serv. Auto. Ass'n v. Perry*,  102 F.3d 144 (5th Cir. 1996).

Ambiguity is also determined with regard to the context of the statute and its consistency and coherence.  As the Supreme Court has noted in *Robinson v. Shell Oil Co*., 519 U.S. 337, 340 (1997):

> Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent." The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.  (Citations omitted).

Using this approach, the Court in *Robinson* determined that the term "employees," as used in the statute in question was ambiguous as to whether it excluded former employees.

Finally, as Judge Mark noted, the plain meaning of the statue will be rebutted when a contrary legislative intent is clearly expressed.  "In such cases, the intention of the drafters, rather than the strict language, controls."  *In re Kaplan,* 2005 WL 2508151 at 4, citing *United States v. Ron Pair Enter., Inc*., 489 U.S. 235, 243 (1989).

Therefore, a resort to legislative history is necessary.  As set forth in the House Report 109-31(Part I) to accompany S. 256, reported in the legislative history at 2005 (June) U.S.C.C.A.N. p. 102:

> The bill also restricts the so-called "mansion loophole." Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to

7

take advantage of their "mansion loophole" laws. S. 256 closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days. The bill further reduces the opportunity for abuse by requiring a debtor to own the homestead for at least 40 months before he or she can use state exemption law; current law imposes no such requirement.

A footnote (#72) in this legislative history further explains that:

If the debtor owns the homestead for less than 40 months, the provision imposes a $125,000 homestead cap. In effect, this provision overrides state exemption law authorizing a homestead exemption in excess of this amount and allows such law to control if it authorizes a homestead exemption in a lesser amount.

*Id.*

Although Judge Haines was dismissive of the legislative history, indicating that it was merely a recital of the statute, this Court believes that the "recital" indicates that Congress clearly intended to apply the provisions of (p) to all debtors and not merely those citizens of states that permit the use of federal exemptions. The description of § 322 in the House Report is as follows:

[This §] amends § 522 of the Bankruptcy Code to impose an aggregate monetary limitation of $125,000 . . . on the value of property that the debtor may claim as exempt under State or local law pursuant to § 522(b)(3)(A) under certain circumstances. The monetary cap applies if the debtor acquired such property within the 1,215-day period preceding the filing of the petition . . . ."

2005 (June) U.S.C.C.A.N. p. 148

Nowhere is there a suggestion that the $125,000 homestead limitation is applicable to debtors in some states but not to debtors in other states. Rather, it is obvious that Congress intended to eliminate some of anomalies created by the use of state homestead exemptions and create a more uniform, predictable set of exemptions. Congress wanted to close what it perceived was the abuse of exemptions caused, in part, by the varying state laws and overly generous homesteads. There is no question that the issue of exemptions was on the mind of Congress as well as the public. *See generally*, Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,* 79 AM. BANKR. L. J. 485 (2005). Charles Jordan Tabb, "*The Death of Consumer Bankruptcy in the United States*, 18

8

1  BANKR. DEV. J. 1, 42-46. (2001).

2  **CONCLUSION**

3      11 U.S.C. § 522(p) is applicable even though Nevada does not allow the choice of federal

4  exemptions.    Because the debtors acquired their homes within the 1215 days before the filing

5  they are limited to the $125,000 homestead set forth in that § notwithstanding the fact that the

6  Nevada homestead is higher.

7      A separate order granting the trustee's objection to exemption will be entered in each

8  case.

9

10  Copies noticed to:

11

12      Mark Segal, Esq.
    James Lisowski, Trustee
    Donna Osborn, Esq.

13      Stan Pack, Trustee
    Steven Alpert, Esq.

14

15      Jay Young, Esq.
    Marquis & Aurbach
    10001 Park Run Drive

16      Las Vegas, NV 89145

17      Cheryl Heisel
    1760 Sunflower Court

18      Henderson, NV 89145

19      Robert & Odette Virissimo
    5575 N. Riley Street

20      Las Vegas, NV 89149

21

22

23

24

25

26

27

28